**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

JEFFERY DALE CLEMENT,           )
                                )
                Petitioner,     )
                                )
           v.                   )         1:19CV531
                                )
ERIK A. HOOKS,                  )
                                )
                Respondent.     )

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 4; see also Docket Entry 5 (supporting Memorandum); Docket Entry 9 (supplemental supporting filing).) Respondent has moved for summary judgment (Docket Entry 12; see also Docket Entry 13 (Brief in Support)) and Petitioner has filed a response in opposition (Docket Entry 16), as well as a motion to appoint counsel and for discovery (Docket Entry 17; see also Docket Entry 19 (Respondent's Response); Docket Entry 21 (Petitioner's reply); Docket Entry 22 (Petitioner's supplemental supporting filing)). For the reasons that follow, the undersigned United States Magistrate Judge will deny Petitioner's motion to appoint counsel and for discovery, and will recommend that the Court grant Respondent's Motion for Summary Judgment.

# I. __Procedural History__

On May 23, 2018, in the Superior Court of Surry County, Petitioner entered pleas pursuant to __North Carolina v. Alford__, 400 U.S. 25 (1970), to 30 drug-related felony and misdemeanor charges, as well as to charges of misdemeanor possession of a non-tax paid alcoholic beverage, possession of a firearm by a convicted felon, felony larceny, larceny of a motor vehicle, and conspiracy to commit felony larceny. (See Docket Entry 4, ¶¶ 1, 2, 4-6; __see also__ __id.__ at 16-17; Docket Entry 13-2.)[1] The trial court consolidated the convictions into five separate judgments, and sentenced Petitioner to consecutive prison terms of 90 to 120 months and 10 to 21 months, as well as three suspended prison terms of 18 to 31 months, 15 to 27 months, and 9 to 20 months. (Docket Entry 4, ¶ 3; __see also__ Docket Entries 13-3 through 13-7.) Petitioner thereafter neither appealed his convictions (__see__ Docket Entry 4, ¶ 8), nor filed a Motion for Appropriate Relief ("MAR") in the state court collaterally attacking those convictions (__see__ __id.__, ¶ 10).

Petitioner sent a letter dated April 26, 2019, to the Clerk of this Court (Docket Entry 1), which the Clerk file-stamped on May 17, 2019 (__see__ __id.__ at 1), "requesting a time extension to file a Writ of Habeas Corpus" (__id.__). On May 23, 2019, the undersigned Magistrate Judge entered an Order (Docket Entry 3) "treat[ing]

---

[1] Page citations refer to the page numbers that appear in the footer appended to documents upon their docketing in the CM/ECF system.

Petitioner's filing as a petition under § 2254" because "Petitioner [wa]s near the time limit for filing a § 2254 petition" (id. at 1), striking the petition (id. at 2), and staying the matter for 30 days to "allow Petitioner time to resubmit his Petition in a form that complie[d] with this Court's rules" (id.). Petitioner thereafter submitted the instant Petition (Docket Entry 4), along with a supporting memorandum (Docket Entry 5) and a supplemental supporting filing (Docket Entry 9). Respondent moved for summary judgment both on the merits and on the procedural ground of non-exhaustion (Docket Entries 12, 13), Petitioner responded (Docket Entry 16), and subsequently filed a motion to appoint counsel and for discovery (Docket Entry 17), which Respondent opposed (Docket Entry 19), whereupon Petitioner replied (Docket Entries 21, 22).

## II. **Petitioner's Claims**

The Petition identifies five grounds for relief:

1) "Ineffective Assistance of Counsel (Retained) to represent [Petitioner] in cases 15CRS054481-95 and 16CRS054084-88" (Docket Entry 4, ¶ 12(Ground One)), in that "[c]ounsel filed [a] motion to suppress and did not secure [a] ruling on [the] motion or reserve the right to appeal the suppression issue before entering [the] plea[s], did not investigate other charges, coerced [Petitioner] into taking [the] plea[s], informed [Petitioner] that [he] could not retract [the] plea[s], did not discuss with [Petitioner] of [sic] appealability, failed to address [a] 4th Amendment claim on

3

removing [the] safe from [Petitioner's] residence, refus[ed] to turn over [the] case file, [made] repeated [false] assurance[s] of working on seized property . . ., [and] represent[ed] to [sic] many clients to be effective by American Bar Assoc. standards" (id., ¶ 12(Ground One)(a));

2) "Ineffective assistance of counsel – court appointed to represent [Petitioner] in case numbers starting with 18CRS-------" (id., ¶ 12(Ground Two)), in that she "[d]id not investigate [the] charges, [a]dvised [Petitioner] to take plea[s] that she had not reviewed, was not present at [the] plea hearing, [r]efuse[d] to correspond or relinquish [the] case file, [and] did not address civil controlled substance tax resulting from [the] criminal charges as she stated she would" (id., ¶ 12(Ground Two)(a));

3) "Prosecutorial misconduct Surry County North Carolina Assistant District Attorney Tim Watson and office" (id., ¶ 12(Ground Three)), in that "[n]o indictments or waivers [were] entered in several cases, nor probable cause hearings held or waived[, r]equest[s] for materials/records to proceed in litigation went unanswered, therefore denying 'due process' and 'access to courts[,]' [and i]n [the] summary of evidence [the] prosecutor stated 'the drugs were found in [Petitioner's] brother's pocket,' yet [Petitioner] was sentenced for them[ and Petitioner's brother,] Everette Neil Clement had previously plead [sic] guilty to the offense" (id., ¶ 12(Ground Three)(a));

4) "Judicial Misconduct - Surry County N.C. Clerk of Court - North Carolina Administrative Office of the Courts" (id., ¶ 12(Ground Four)), in that "[r]epeated request[s] to [the] clerk for case records: complied with in part, denied in majority[, e]ach reply contained [a] flier referring [sic] AOC as directing [the] court to provide copies[, l]etter to and reply from N.C.A.O.C. stating differently[,] AOC forwarded a copy of [Petitioner's] letter to '[his] attorney' who does not exist because [Petitioner's] case is final[, and] AOC being advocate [sic] ineffective defense attorney" (id., ¶ 12(Ground Four)(a) (internal parenthetical citations omitted)); and

5) "'Due Process' and 'Access to Courts' denied by North Carolina Department of Public Safety" (id. at 18; see also id. (setting forth as "[s]upporting facts" that "[r]equire[ment] t[hat Petitioner] work forty (40) and fifty (50) hour work weeks in North Carolina Correctional Enterprises sewing plant for slave wages, under threat of displinary [sic] action for not doing so [gave him n]o viable coarse [sic] to receive time off of job to prepare legal claims[,] N.C.D.P.S. has contracted with North Carolina Prisoner Legal Services Inc to provide legal services and eliminate 'Law Librarys [sic] [,]' NCPLS are 'ineffective counsel' as provided by constitutional law[, t]hey do not provide legal assitance [sic], services, or resources for legitimate actions or anyone who wishes to proceed on thier [sic] own[, and] N.C.D.P.S. does not provide

any outlet for making photocopies or even the use of a simple staple to secure legal papers together" (internal parenthetical citation omitted))).

### III. <u>Discussion</u>

### A. Exhaustion

The Court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a [s]tate court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Moreover, "[b]efore [the C]ourt may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to [this C]ourt in a habeas petition. The exhaustion doctrine . . . is now codified at 28 U.S.C. § 2254(b)(1)." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999). A habeas petitioner meets this exhaustion requirement by "'fairly present[ing]' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim." <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004). "Fair presentation" means that the petitioner "presented face-up and squarely . . . both the operative facts and the controlling legal principles" of the federal habeas claim. <u>Baker v. Corcoran</u>, 220 F.3d 276, 289 (4th Cir. 2000) (internal quotation marks omitted).

In North Carolina, a petitioner can meet this "exhaustion requirement by directly appealing his conviction and/or sentence to the North Carolina Court of Appeals and then petitioning the North Carolina Supreme Court for discretionary review, or by filing an MAR and then petitioning the North Carolina Court of Appeals for a writ of certiorari."  Hooks v. Hooks, No. 3:18CV611, 2019 WL 5791006, at *2 (W.D.N.C. Nov. 5, 2019) (unpublished) (citing N.C. Gen. Stat. §§ 7A-31, 15A-1422).   "A State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, expressly waives the requirement."  28 U.S.C. § 2254(b)(3).

Here, Respondent argues that "Petitioner cannot show that he has exhausted his state remedies in this case[, as he] did not file [a] direct appeal from his guilty pleas, . . . [n]or did [he] file an MAR raising any of the issues presented in the Petition." (Docket Entry 13 at 18; see also Docket Entry 4, ¶¶ 8, 10 (reflecting Petitioner's admissions that he neither appealed his convictions nor attacked them collaterally).)  In Petitioner's response in opposition to the instant Motion for Summary Judgment, he acknowledged that "the process of filing for state remedies [wa]s still open as to the exhaustion rules," but argues that the state's continued "refus[al] to turn over [d]iscovery materials needed to properly file for state remedies" constitutes "one example of the states [sic] prejudice in . . . denying [him a]ccess

to [c]ourts." (Docket Entry 16 at 14; <u>see also</u> <u>id.</u> at 16-20 (detailing other unsuccessful efforts Petitioner undertook to obtain materials to support state habeas filing), 20 (deeming various actors' failure to turn over requested materials "negligence and gross impediment to due process in both state [and] federal filings, showing cause and prejudice"); Docket Entry 4, ¶ 12(Ground One)(b) ("No meaningful opportunity for claims to be previously heard. Government interference has impeded the presentation of claims. Procedural default rule is overcome by show of 'cause' and 'prejudice' in demonstrating ineffectiveness of counsel. Totality of injustices has created a 'fundamental miscarriage of justice.'").)

Under North Carolina's post-conviction relief procedure, Petitioner can file a MAR "[a]<u>t any time after verdict</u>," N.C. Gen. Stat. § 15A-1415(a) (emphasis added), alleging that his "conviction was obtained in violation of the Constitution of the United States," N.C. Gen. Stat. § 15A-1415(b)(3). Moreover, North Carolina's rules for procedural default would not bar Petitioner's Grounds for Relief under the circumstances presented here. <u>See</u> N.C. Gen. Stat. § 15A-1419(a) (providing as grounds for denial of MAR that, upon a previous MAR or appeal, "[t]he ground or issue underlying the motion was previously determined on the merits" or the petitioner "was in a position to adequately raise the ground or issue underlying the present motion but did not do so"). Thus,

Petitioner's Grounds for Relief qualify as unexhausted, but not procedurally defaulted. Because Petitioner's Grounds for Relief do not face a procedural default, arguments as to "cause and prejudice" and "fundamental miscarriage of justice" do not apply; however, the Court could liberally construe Petitioner's <u>pro se</u> filings to argue that the Court should not require Petitioner to exhaust even <u>available</u> state court remedies, because "circumstances exist that render such process ineffective to protect [his] rights," 28 U.S.C. § 2254(b)(1).

The Court need not, however, resolve the issue of whether available state court remedies remain effective to protect Petitioner's rights because, as Respondent urges (<u>see</u> Docket Entry 13 at 16), the Court may deny Petitioner's Grounds for Relief on the merits, notwithstanding the failure to exhaust, under 28 U.S.C. § 2254(b)(2). "[A] district court has the authority to deny a petitioner's unexhausted habeas claims on the merits, . . . [where] it is obvious that the petitioner is not presenting a colorable federal claim." <u>Ward v. Trent</u>, 19 F. Supp. 2d 608, 613 (S.D.W. Va. 1998) (internal quotation marks omitted), <u>aff'd in part, dismissed in part on other grounds</u>, No. 98-7267, 188 F.3d 505 (table), 1999 WL 638606 (4th Cir. Aug. 23, 1999) (unpublished); <u>see also</u> <u>Swisher v. True</u>, 325 F.3d 225, 232-33 (4th Cir. 2003) (affirming district court's discretionary decision to deny "clearly unexhausted" habeas corpus claim on the merits pursuant to Section 2254(b)(2)). As all

five of Petitioner's Grounds for Relief clearly lack any merit, the Court should exercise its discretion under Section 2254(b)(2) to deny those Grounds on the merits.

**B. Merits**

1.  Ground One

Via Ground One, Petitioner contends that his retained trial counsel provided constitutionally ineffective assistance (see Docket Entry 4, ¶ 12(Ground One)) in that "[c]ounsel filed [a] motion to suppress and did not secure [a] ruling on [the] motion or reserve the right to appeal the suppression issue before entering [the] plea[s], did not investigate other charges, coerced [Petitioner] into taking [the] plea[s], informed [Petitioner] that [he] could not retract [the] plea[s], did not discuss with [Petitioner] of [sic] appealability, failed to address [a] 4th Amendment claim on removing [the] safe from [Petitioner's] residence, refus[ed] to turn over [the] case file, [made] repeated [false] assurance[s] of working on seized property . . ., [and] represent[ed] to [sic] many clients to be effective by American Bar Assoc. standards" (id., ¶ 12(Ground One)(a)). In Petitioner's supporting Memorandum, he additionally asserted that retained counsel failed him by negotiating the plea without informing Petitioner (see Docket Entry 5 at 7), informing Petitioner he would receive a 100-month prison sentence (see id. at 18), not objecting to the prosecutor's statement that the drugs were found in

10

Petitioner's brother's pocket (see id.), failing to object to multiplicitous charges (see id.), and failing to advise Petitioner as to available defenses to the 2018 charges (see id.). None of those ineffective assistance sub-claims, either individually or in totality, entitles Petitioner to relief.

The Fourth Circuit has provided guidance in regards to the clearly established law governing ineffective assistance claims:

> In order to establish an ineffective assistance of counsel claim . . ., [a petitioner must] establish that his "counsel's representation fell below an objective standard of reasonableness," measured by the "prevailing professional norms," [Strickland v. Washington, 466 U.S. 668, 688 (1984)], and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "Unless a [petitioner] makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687.
>
> In determining whether counsel's performance was deficient, "[i]t is all too tempting for a [petitioner] to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. Hence, "court[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks omitted).
>
> Similarly, in evaluating whether [a petitioner] has shown actual prejudice from any such deficient performance, it is insufficient for the [petitioner] "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." Id. at 693. Rather, a "reasonable probability" that the result would have

been different requires "a probability sufficient to undermine confidence in the outcome." Id. at 694.

Fisher v. Lee, 215 F.3d 438, 446-47 (4th Cir. 2000) (parallel citations omitted).

In the specific context of guilty pleas (as here), to establish prejudice under Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Furthermore, "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances," Padilla v. Kentucky, 559 U.S. 356, 372 (2010), which constitutes an "objective inquiry" focusing on "the likely outcome of a trial had the defendant not pleaded guilty," Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007); see also Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988) (declining to place "great weight" on the petitioner's statement that, absent trial counsel's alleged errors, "he would have chosen to go to trial," because "such a statement suffers from obvious credibility problems and must be evaluated in light of the circumstances the defendant would have faced at the time of his decision").

As a threshold matter, Petitioner's assertions that his retained counsel mishandled certain collateral forfeiture matters, such as by "fail[ing] to address [a] 4th Amendment claim on

removing [the] safe from [Petitioner's] residence" and by making false "repeated assurance[s] of working on seized property," as well as that counsel "refus[ed] to turn over [the] case file," (Docket Entry 4, ¶ 12(Ground One)(a)) remain non-cognizable on federal habeas review. "'[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.' <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 484 (1973). . . . [C]orrecting such error[s] would have no impact on the legality of [Petitioner]'s sentence." <u>Morton v. Crews</u>, No. CIV.A. 10-148, 2012 WL 1410252, at *14 (E.D. Ky. Mar. 27, 2012) (unpublished), <u>recommendation adopted</u>, 2012 WL 1410186 (E.D. Ky. Apr. 23, 2012) (unpublished).

Petitioner's contention that retained counsel "represent[ed] to [sic] many clients to be effective by American Bar Assoc. standards" (Docket Entry 4, ¶ 12(Ground One)) fails as conclusory and unsupported, <u>see</u> <u>Nickerson v. Lee</u>, 971 F.2d 1125, 1136 (4th Cir. 1992) (holding that, "[i]n order to obtain an evidentiary hearing . . . a habeas petitioner must come forward with some evidence that the claim might have merit," and that "[u]nsupported, conclusory allegations do not entitle a habeas petition to an evidentiary hearing"), <u>abrogated on other grounds</u>, <u>Gray v. Netherland</u>, 518 U.S. 152, 165-66 (1996). Petitioner has not provided the Court with <u>any</u> information regarding retained

counsel's client load or which American Bar Association standard that client load supposedly violated, and has failed to detail how that client load actually impacted retained counsel's performance, i.e., counsel failed to return Petitioner's telephone calls, to meet with Petitioner, or to file certain documents or take other actions necessary for a proper defense.  (See Docket Entries 4, 5, 9, 16.)  Such "[v]ague and conclusory allegations . . . may be disposed of without further investigation by the [] Court." United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013).

Petitioner's voluntary and knowing guilty pleas bar his complaint that retained counsel "failed to object to multiplicitous charges" (Docket Entry 5 at 18), because "a guilty plea represents a break in the chain of events which has preceded it in the criminal process" and, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea," Tollett v. Henderson, 411 U.S. 258, 267 (1973).  This ineffective assistance sub-claim also falls short as conclusory under Nickerson, 971 F.2d at 1136.  In order to show that any of Petitioner's charges qualify as multiplicitous, "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether

there are two offenses or only one, is whether each provision requires proof of a fact which the other does not," <u>Blockburger v. United States</u>, 284 U.S. 299, 304 (1932).  Here, Petitioner has made <u>no</u> effort, beyond his own bald assertions, to demonstrate how any of his charges meet the test for impermissible multiplicity under <u>Blockburger</u>.  (<u>See</u> Docket Entries 4, 5, 9, 16.)

Petitioner's challenge to retained counsel's failure to "investigate other charges" (Docket Entry 4, ¶ 12(Ground One)(a)) fares no better.  In that regard, Petitioner faults retained counsel for not interviewing his girlfriend and his brother as to their ownership of the drugs which led to Petitioner's 2016 charges.  (<u>See</u> Docket Entry 5 at 15-16; <u>see also</u> Docket Entry 16 at 6-7; Docket Entry 9-1 (Affidavit of Everette Neal Clement); Docket Entry 9-2 (Affidavit of Tara Galene Hawks).)  Those arguments miss the mark for three reasons.

First, as Respondent argues (<u>see</u> Docket Entry 13 at 11-12), Petitioner fails to acknowledge that the fact that sheriff's deputies found the drugs in question in the pocket of Petitioner's brother did not preclude prosecutors from charging Petitioner with possession of those drugs, <u>see</u> <u>State v. Bowens</u>, 140 N.C. App. 217, 222 (2000) (noting that drug "[p]ossession may be either actual or constructive" and detailing evidence sufficient to establish constructive possession (citing <u>State v. Broome</u>, 136 N.C. App. 82,

87 (1999), <u>disc. review denied</u>, 351 N.C. 362 (2000))).[2] Given the state of North Carolina law with regard to constructive possession, Petitioner simply has not shown that retained counsel's alleged failure to interview Petitioner's brother and girlfriend amounted to constitutionally deficient performance.

Second, contrary to Plaintiff's assertion that the affidavits of his brother and girlfriend reflect "their willingness to testify on [Petitioner's] behalf" (Docket Entry 16 at 3), neither affidavit contains <u>any</u> statement indicating that those individuals ever offered (or would have offered) to testify at Petitioner's trial (<u>see</u> Docket Entries 9-1, 9-2). More critically, those affidavits also fail to state that the affiants conveyed to Petitioner's retained counsel that they would have offered credible exculpatory evidence at Petitioner's trial. (<u>See</u> <u>id.</u>)[3]

_____

[2] As an attorney with North Carolina Prisoner Legal Services ("NCPLS") informed Petitioner in response to his request for legal assistance:

> [w]hen you took an <u>Alford</u> plea, you agreed to be treated as guilty even if you disputed the State's evidence. Therefore, you gave up the argument that the State did not have enough proof that you possessed the drugs. Also, it is legal for multiple people to be charged and sentenced for possession of the same drugs. [NCPLS] can't file anything because the drugs were found in your brother's pocket.

(Docket Entry 4-7 at 3.)

[3] Petitioner maintains that his retained counsel informed Petitioner that a "conflict of interest" prevented counsel from speaking with Petitioner's brother. (Docket Entry 16 at 6; <u>see also</u> Docket Entry 9-2 at 1 (affidavit of Petitioner's girlfriend averring that staff at retained counsel's office "refused to talk to [her], stating 'conflict of interest'").) In light of the fact that Petitioner's girlfriend (a co-defendant in Petitioner's 2016 drug charges) admitted representation by an appointed counsel (<u>see</u> Docket Entry 9-2 at 1), and that Petitioner's brother (also a co-defendant in those same charges) admitted that he pleaded guilty to those charges (<u>see</u> Docket Entry 9-2 at ), Petitioner's retained counsel's alleged reference to a "conflict of interest" likely would

Third, to the extent Petitioner wished to assert his innocence of the charges and to argue that that only his brother and girlfriend bore responsibility for the drugs in question, Petitioner should have rejected the prosecution's plea offer and insisted on a trial. See Stroupe v. United States, 664 F. Supp. 2d 598, 608 (D.S.C. 2009) ("If [the p]etitioner honestly believed that the indictment was based upon [] lies . . ., he was entitled to a trial, where he could have tested the merits of such an argument and the credibility of his accusers[; however, the p]etitioner's plea acts as an acceptance of their credibility, and collateral review of the matter is simply an inappropriate forum to review [the p]etitioner's willing acceptance of the charges."); see also Sunal v. Large, 332 U.S. 174, 179 (1947) ("[T]he writ [of habeas corpus] is not designed for collateral review of . . . the existence of any evidence to support the conviction . . . ."); United States v. Ochsner, Crim. No. 89-220, 1992 WL 6279, at *1 (E.D. La. Jan. 6, 1992) (unpublished) ("[The petitioner] cannot, after entering a guilty plea, challenge the evidence upon which the indictment against him rested.").

Petitioner also alleges that retained counsel provided ineffective assistance by not investigating James Robert Brintle as the "actual mastermind" of the events leading to Petitioner's 2018

---

have represented a short-hand invocation of the rule prohibiting communication with represented individuals, see N.C. R. Prof. Resp. 4.2. No inference of deficient performance arises from retained counsel's compliance with the rules governing the professional conduct of attorneys in North Carolina.

larceny and drug charges.  (Docket Entry 5 at 17; see also id.
(alleging that Petitioner's "role would be that of the intended
fraud victim"); Docket Entry 16 at 3 (describing "Christopher
Hatcher [as] owner of property involved in [Petitioner's] cases"),
11-12 (discussing Brintle and identifying Mike Goins as a witness
to such matters); Docket Entry 9-3 (Affidavit of Christopher
Hatcher); Docket Entry 9-4 (Affidavit of Mike Goins).)

Petitioner's arguments fail for two reasons.  First, neither
affidavit contains any averment that Hatcher or Goins ever offered
(or would have offered) to provide exculpatory testimony at
Petitioner's trial or that Petitioner's retained counsel possessed
any awareness that those individuals willingly would provide such
testimony.  (See Docket Entries 9-3, 9-4.)  Second, and more
significantly, to the extent Petitioner possessed information about
Brintle's allegedly heightened role in the larceny conspiracy (or
of Petitioner's innocence of that conspiracy), Petitioner should
have declined the plea offer and proceeded to trial to pursue his
vindication.  See Stroupe, 664 F. Supp. 2d at 608 ("If [the
p]etitioner honestly believed that the indictment was based upon []
lies . . ., he was entitled to a trial, where he could have tested
the merits of such an argument and the credibility of his
accusers[; however, the p]etitioner's plea acts as an acceptance of
their credibility, and collateral review of the matter is simply an
inappropriate forum to review [the p]etitioner's willing acceptance

18

of the charges."); see also Sunal, 332 U.S. at 179 ("[T]he writ [of habeas corpus] is not designed for collateral review of . . . the existence of any evidence to support the conviction . . . ."); Ochsner, 1992 WL 6279, at *1 ("[The petitioner] cannot, after entering a guilty plea, challenge the evidence upon which the indictment against him rested.").

Next, Petitioner faults retained counsel for not securing a ruling on the pending motion to suppress prior to Petitioner's acceptance of the plea offer and not reserving the right to contest on direct appeal the trial court's ruling on the motion to suppress. (See Docket Entry 4, ¶ 12(Ground One)(a); see also Docket Entry 5 at 6-7; Docket Entry 16 at 2.) Those contentions fail to show deficient performance for two reasons. First, Petitioner's knowing and voluntary decision to accept the plea offer on May 23, 2018, mooted the pending motion to suppress filed on November 9, 2017 (see Docket Entry 16 at 25-29), and ended any duty on the trial court's part to rule on that motion. If Petitioner had desired to obtain a ruling on the motion to suppress before weighing his prospects at trial, he could have simply rejected the prosecution's plea offer. Second, Petitioner has not shown that the prosecutor would have agreed, as part of the plea offer, to permit Petitioner to reserve the right to challenge the trial court's suppression ruling on appeal. See Williams v. United States, No. 1:11CV909, 2015 WL 13548372, at *4 (M.D.N.C. Feb. 2,

19

2015) (unpublished) (Webster, M.J.) (rejecting the petitioner's ineffective assistance claim premised on counsel's "fail[ure] to secure [] a conditional plea or open plea, which would have preserved [the petitioner's] right to appeal an adverse pretrial ruling on a suppression motion," because "there [wa]s nothing in the record to indicate that the Government would have made such a concession"), recommendation adopted, 2015 WL 13548160 (M.D.N.C. Mar. 10, 2015) (unpublished) (Osteen, Jr., C.J.).

Petitioner additionally complains that retained counsel failed to object to the prosecutor's statement during the plea hearing that deputies found the drugs giving rise to Petitioner's 2018 drug charges in the pocket of his brother. (See Docket Entry 4, ¶ 12(Ground One)(a); see also Docket Entry 5 at 15; Docket Entry 16 at 6.) However, counsel could not have "objected," as Petitioner admits that deputies, in fact, found the drugs in his brother's pocket (see Docket Entry 5 at 15; see also Docket Entry 16 at 6). Moreover, as discussed above, the fact that deputies found the drugs in the pocket of Petitioner's brother did not preclude the prosecution from charging Petitioner with possession of those drugs, see Bowens, 140 N.C. App. at 222. "[C]ounsel was not constitutionally ineffective in failing to object to . . . certain remarks made by the prosecutors . . . because it would have been futile for counsel to have done so . . . ." Oken v. Corcoran, 220 F.3d 259, 269 (4th Cir. 2000).

Petitioner lastly blames retained counsel for negotiating the plea agreement without informing Petitioner (see Docket Entry 5 at 5), failing to discuss any defense to the 2018 charges (see Docket Entry 5 at 18), informing Petitioner that the judge would sentence him to 100 months in prison (see id.), coercing Petitioner to plead guilty (see Docket Entry 4, ¶ 12(Ground One)(a); see also Docket Entry 5 at 15 (alleging that retained counsel "informed [Petitioner] in a threatening manner that, '[counsel] d[id]n't have time for one jury trial must [sic] less five'")), advising Petitioner that he could not retract his guilty pleas (see Docket Entry 4, ¶ 12(Ground One)(a)), and failing to discuss "appealability" with Petitioner (see id.). All of those ineffective assistance sub-claims fail as a matter of law.

"Representations of the defendant, his lawyer, and the prosecutor at [] a [plea] hearing as well as any findings made by the judge in accepting the plea constitute a formidable barrier in subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). A petitioner challenging his plea "necessarily . . . assert[s] that not only his own transcribed responses, but [also] those given by two lawyers, were untruthful . . . ." Id. at 80 n.19. "In the absence of clear and convincing evidence to the contrary, [a petitioner] must be bound by what he said at the time of the plea." Little v. Allsbrook, 731 F.2d 238, 239 n.2 (4th Cir. 1984).

Here, Petitioner's contentions that retained counsel misadvised Petitioner about the plea agreement, coerced his guilty pleas, and failed to discuss with him possible defenses and appeal rights (see Docket Entry 4, ¶ 12(Ground One)(a); see also Docket Entry 5 at 5, 15, 18) contradict the transcript of plea form which Petitioner signed under oath (Docket Entry 13-2). In that document, Petitioner, a 52-year-old college-educated man, swore that 1) he "underst[oo]d the nature of the charges" against him and "every element of each charge," 2) retained counsel had "discussed the possible defenses, if any, to the charges" with him, 3) he remained "satisfied with his lawyer's legal services," and 4) he underst[oo]d that following a plea of guilty or no contest there [we]re limitations on [his] right to appeal." (Id. at 2 (emphasis added).) Petitioner then agreed, under oath, that the following plea agreement remained "correct" and constituted the "full plea arrangement":

> [Petitioner] agrees to plead guilty to all charges listed. The State agrees that Defendant will receive an active sentence on the 12/22/2015 Class E Trafficking Methamphetamine charge of 90-120 months and an active sentence of 10-21 months in the Class H PWISD from 10/31/2016, to run at the expiration of the trafficking sentence. [Petitioner] will then receive three (3) separate suspended sentences for the Class G Possession of Firearm by Felon, Class H PWISD Cocaine and, Class F attempted Trafficking in Methamphetamine charges from 2/2/2018, which will begin after his active sentences are

finished.  The State further agrees that all other guilty
charges will be consolidated into those listed above.

(Id. at 3.)  Petitioner thereafter denied that "anyone promised
[him] anything or threatened [him] in any way to cause [him] to
enter th[e guilty] plea[s] against his wishes," and that he
"entered th[e guilty] plea[s] of [his] own free will, fully
understanding" his actions.  (Id. (emphasis added).)

Petitioner further indicated that he "agree[d] that there
[we]re facts to support [his guilty] plea[s]," and that he did not
"have any questions about [the plea colloquy] or about anything
else connected to [his] case."  (Id.)  Retained counsel and the
prosecutor each certified that Petitioner had agreed to plead
guilty as reflected in the plea arrangement.  (Id.)  Petitioner's
self-serving, after-the-fact contentions that retained counsel
misadvised Petitioner about the plea agreement, coerced his guilty
pleas, and failed to discuss with him possible defenses and appeal
rights (see Docket Entry 4, ¶ 12(Ground One)(a); see also Docket
Entry 5 at 5, 15, 18) fall far short of the "clear and convincing
evidence" necessary for this Court to disregard his sworn and
unambiguous statements, and those of retained counsel and the
prosecutor, to the contrary at the plea hearing, Little, 731 F.2d
at 239 n.2.

Alternatively, even assuming, arguendo, that Petitioner's
ineffective assistance contentions (either individually or in
totality) could establish constitutionally deficient performance by

retained counsel, Petitioner still cannot demonstrate sufficient

prejudice under Strickland.  As well-argued by Respondent:

> At the time of Petitioner's guilty plea, he was facing at
> least 36 [] individual charges.  If Petitioner [had] been
> convicted of all charges then pending against him, he was
> susceptible to a total maximum punishment of more than
> 1,288 months (or roughly 107.33 years) imprisonment, and
> between a $100,000 to $400,000 fine.  Even if Petitioner
> serves the maximum cumulative term of imprisonment under
> his plea agreement, 141 months, the plea arrangement
> reduced his exposure to imprisonment by more than 89
> percent. . . . Petitioner was facing a massive term of
> imprisonment for his various crimes and the plea
> agreement he voluntarily accepted greatly reduced his
> term of incarceration.

(Docket Entry 13 at 8-9.)  "[Petitioner], in other words, was lucky

to receive the deal that he did."  United States v. Fugit, 703 F.3d

248, 260 (4th Cir. 2012).

Under such circumstances, Petitioner has failed as a matter of

law to show that "a decision to reject the plea bargain would have

been [objectively] rational under the circumstances," Padilla, 559

U.S. at 372.  See, e.g., United States v. Harris, 404 F. App'x 264,

267 (10th Cir. 2010) ("[The petitioner] offers nothing more than

his own word that he would not have pleaded guilty but for

counsel's actions, and conclusory allegations are insufficient to

support an ineffective assistance of counsel claim."); Peacock v.

Sherry, No.07-12215, 2009 WL 2900701, at *1 (E.D. Mich. Sept. 3,

2009) (unpublished) ("[The p]etitioner's conclusory statement that

he would have insisted on going to trial absent his counsel's

ineffective representation falls well short of the standard

required to state an ineffective-assistance claim in the plea-bargain context."); Simon v. McDonough, No. 3:05CV396, 2007 WL 4181030, at *12 (N.D. Fla. Nov. 20, 2007) (unpublished) ("Conclusory, self-serving, after-the-fact statements that [the p]etitioner would not have pled and would have insisted on going to trial do not meet [the prejudice] requirement."); see also United States v. Basham, 789 F.3d 358, 375 (4th Cir. 2015) ("[T]o succeed on his ineffective assistance claims, [the petitioner] is not entitled to satisfy the prejudice requirement though rank speculation . . . ." (internal quotation marks omitted)).

In sum, Ground One warrants no relief.

2. Ground Two

Petitioner's second Ground for Relief alleges ineffective assistance of his court-appointed counsel (Docket Entry 4, ¶ 12(Ground Two)), in that she "[d]id not investigate [the] charges, [a]dvised [Petitioner] to take plea[s] that she had not reviewed, was not present at [the] plea hearing, [r]efuse[d] to correspond or relinquish [the] case file, [and] did not address civil controlled substance tax resulting from [the] criminal charges as she stated she would" (id., ¶ 12(Ground Two)(a)). Petitioner's supporting Memorandum further contends that appointed counsel "never advised [Petitioner] of possible defenses." (Docket Entry 5 at 14.) Those assertions lack merit.

To begin, the Court should deem Petitioner's contentions that his appointed counsel failed to "address" certain collateral tax matters and "[r]efuse[d] to correspond or relinquish [the] case file" (Docket Entry 4, ¶ 12(Ground One)(a)) non-cognizable on federal habeas review.  "'[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'  Preiser[], 411 U.S. [at] 484 . . . . [C]orrecting such error[s] would have no impact on the legality of [Petitioner]'s sentence."  Morton, 2012 WL 1410252, at *14.

Petitioner's next ineffective assistance sub-claim, that appointed counsel "never advised [him] of possible defenses" (Docket Entry 5 at 14) fails as conclusory and unsupported, see Nickerson, 971 F.2d at 1136 (holding that, "[i]n order to obtain an evidentiary hearing . . . a habeas petitioner must come forward with some evidence that the claim might have merit," and that "[u]nsupported, conclusory allegations do not entitle a habeas petition to an evidentiary hearing").  Petitioner has not identified any defenses to his drug trafficking, drug possession, larceny, and firearm charges that appointed counsel should have discussed with him, nor has he asserted the likely success at trial of any such defense or otherwise explained how discussion of such unidentified defenses would have resulted in his rejection of the plea offer and a decision to proceed to trial.  (See Docket Entries

4, 5, 9.)  Moreover, in Petitioner's response in opposition to the
instant Motion for Summary Judgment, he contradicts his assertion
that appointed counsel failed to discuss any defenses to the
charges:

> [Appointed counsel] was appointed in three sets of cases
> on 2/19/18, 2/23/18, and 3-13-18; yet by plea hearing on
> 5/23/20 [sic] she had advised me to take the plea she had
> discussed with [retained counsel].  This was less than
> three months from her appointment until the plea hearing.
> During this time we had talked about strategy for defense
> and was [sic] waiting on discovery.
>
> The strategy we discussed was an illegal traffic stop for
> stop light violation at the egress of a business parking
> area, and the subsequent K-9 search because I had prior
> drug charges.

(Docket Entry 16 at 8 (emphasis added).)  Such "[v]ague and
conclusory allegations . . . may be disposed of without further
investigation by the [] Court," Dyess, 730 F.3d at 359.

   Next, Petitioner maintains that appointed counsel "had been
appointed to represent [him] less than three months when she
advised [him] to take the plea bargain" and thus "had no reasonable
time to investigate [the] charges."  (Docket Entry 5 at 14; see
also Docket Entry 4, ¶ 12(Ground Two)(a) (accusing appointed
counsel of "not investigat[ing] charges"); Docket Entry 16 at 11
(complaining that appointed counsel "obviously did no investigation
other than the prosecutors [sic] file, if she even had that").)
Although Petitioner's assertions lack clarity, he appears to fault
appointed counsel for failing to investigate grounds to contest the
search and seizure of his vehicle and other property on February 2,

2018 (<u>see</u> Docket Entry 16 at 8-10; <u>see also</u> Docket Entry 5 at 3-4), as well as for not interviewing several witnesses regarding the 2018 larceny and drug charges (<u>see</u> Docket Entry 16 at 11-12). Petitioner's arguments fall short on two fronts.

First, as discussed above, to the extent the "witnesses" to Petitioner's 2018 larceny and drug charges constituted persons represented by counsel as co-defendants in the same matter, appointed counsel could not have spoken directly with such witnesses, in light of the rule prohibiting communication with represented individuals, <u>see</u> N.C. R. Prof. Resp. 4.2. Second, if Petitioner believed deputies conducted an illegal search and seizure of his vehicle and property in February 2018 and/or viewed himself as the victim of the larceny conspiracy, he should have rejected the plea offer and insisted on proceeding to trial. <u>See</u> <u>Stroupe</u>, 664 F. Supp. 2d at 608 ("If [the p]etitioner honestly believed that the indictment was based upon [] lies . . ., he was entitled to a trial, where he could have tested the merits of such an argument and the credibility of his accusers[; however, the p]etitioner's plea acts as an acceptance of their credibility, and collateral review of the matter is simply an inappropriate forum to review [the p]etitioner's willing acceptance of the charges."); <u>see</u> <u>also</u> <u>Sunal</u>, 332 U.S. at 179 ("[T]he writ [of habeas corpus] is not designed for collateral review of . . . the existence of any evidence to support the conviction . . . ."); <u>Ochsner</u>, 1992 WL

6279, at *1 ("[The petitioner] cannot, after entering a guilty plea, challenge the evidence upon which the indictment against him rested.").

Petitioner's final ineffective assistance sub-claim blames appointed counsel for "[a]dvis[ing Petitioner] to take plea[s] that she had not reviewed" and for failing to appear on Petitioner's behalf at the plea hearing. (Docket Entry 4, ¶ 12(Ground Two)(a).) Petitioner's assertion that appointed counsel failed to review the plea agreement rests on Petitioner's speculative assumption that, because "less than three months [passed] from [counsel's] appointment until the plea hearing" (Docket Entry 16 at 8), she could not have had time to review the plea agreement. Petitioner fails to explain why he believes three months constitutes an insufficient period of time for appointed counsel to review the plea agreement. (See Docket Entries 4, 5, 9, 16.) Moreover, Petitioner admits that appointed counsel actually discussed the plea agreement with retained counsel. (See Docket Entry 16 at 8 (asserting that, by the time of the plea hearing, appointed counsel "had advised me to take the plea[s] she had discussed with [retained counsel]" (emphasis added)).)

With regard to appointed counsel's alleged absence from the plea hearing, the record before the Court provides some support for Petitioner's assertions. (See Docket Entry 13-2 (Transcript of Plea reflecting signature of retained counsel but not appointed

counsel).)  However, the Transcript of Plea demonstrates that the plea agreement encompassed all of Petitioner's underlying charges from 2015, 2016, and 2018 (see id. at 3, 5, 6), including those assigned to appointed counsel (see Docket Entry 16 at 34-36) and, as stated above, Petitioner admits that appointed counsel discussed the plea agreement with retained counsel (see id. at 8).  Thus, Petitioner has not shown that appointed counsel's absence from the plea hearing prejudiced him in any way.

Furthermore, as discussed in the context of Ground One, even if Petitioner's assertions regarding appointed counsel could establish constitutionally deficient performance, Petitioner still has not shown sufficient Strickland prejudice.  In light of the lengthy prison sentences Petitioner faced if he took his charges to trial, Petitioner has failed to establish that that "a decision to reject the plea bargain would have been [objectively] rational under the circumstances," Padilla, 559 U.S. at 372.  See, e.g., Harris, 404 F. App'x at 267 ("[The petitioner] offers nothing more than his own word that he would not have pleaded guilty but for counsel's actions, and conclusory allegations are insufficient to support an ineffective assistance of counsel claim."); Peacock, 2009 WL 2900701, at *l ("[The p]etitioner's conclusory statement that he would have insisted on going to trial absent his counsel's ineffective representation falls well short of the standard required to state an ineffective-assistance claim in the

plea-bargain context."); <u>Simon</u>, 2007 WL 4181030, at *12 ("Conclusory, self-serving, after-the-fact statements that [the p]etitioner would not have pled and would have insisted on going to trial do not meet [the prejudice] requirement."); <u>see also</u> <u>Basham</u>, 789 F.3d at 375 ("[T]o succeed on his ineffective assistance claims, [the petitioner] is not entitled to satisfy the prejudice requirement though rank speculation . . . ." (internal quotation marks omitted)).

In short, Petitioner has failed to demonstrate ineffective assistance by his appointed counsel and thus the Court should deny Ground Two.

3. Ground Three

Next, Petitioner maintains that "[p]rosecutorial misconduct" occurred in his case (Docket Entry 4, ¶ 12(Ground Three)), in that "[n]o indictments or waivers [were] entered in several cases, nor probable cause hearings held or waived[, r]equest[s] for materials/records to proceed in litigation went unanswered, therefore denying 'due process' and 'access to courts[,]' [and i]n [the] summary of evidence [the] prosecutor stated 'the drugs were found in [Petitioner's] brother's pocket,' yet [Petitioner] was sentenced for them[ and Petitioner's brother,] Everette Neil Clement had previously plead [sic] guilty to the offense" (<u>id.</u>, ¶ 12(Ground Three)(a)). Petitioner's supporting Memorandum

additionally complains of "[m]ultiplicitous indictments in several charges."  (Docket Entry 5 at 13.)

In order to establish prosecutorial misconduct, Petitioner must show that the prosecutor's actions "'so infected the [proceedings] with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  "[A] court making a due process inquiry must consider the challenged conduct in relation to the proceeding as a whole[ and thus t]he analysis of a due process claim premised on unfair prosecutorial conduct may [] depend upon numerous factors, which include the nature of the prosecutorial misconduct, the extent of the improper conduct, the issuance of curative instructions from the court, any defense conduct inviting the improper prosecutorial response, and the weight of the evidence."  Humphries v. Ozmint, 397 F.3d 206, 218 (4th Cir. 2005) (internal citations omitted) (citing Darden, 477 U.S. at 181-82, and DeChristoforo, 416 U.S. at 645).

Here, Petitioner's assertions utterly fail to show a denial of due process by the prosecutor.  As an initial matter, Petitioner fails to identify which of the 36 charges to which he pled guilty allegedly lacked indictments or waivers (see Docket Entries 4, 5, 9, 16) and thus his contentions fail as conclusory, Nickerson, 971 F.2d at 1136.  Furthermore, the record before the Court contradicts

Petitioner's contentions in that each of his cases contained either a valid indictment or a waiver of indictment. <u>See</u> Docket Entry 13 at 10-11; <u>see also</u> Docket Entry 4-8 (letter from NCPLS to Petitioner advising him appropriate charging documents existed in all of his cases).)[4]

Moreover, Petitioner's voluntary and knowing guilty pleas bar Ground Three's assertions of prosecutorial misconduct relating to indictments and probable cause hearings, because "a guilty plea represents a break in the chain of events which has preceded it in the criminal process" and, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea," <u>see</u> <u>Tollett</u>, 411 U.S. at 267.

Petitioner next maintains that the prosecutor's failure to answer Petitioner's "[r]equest for materials/records to proceed in litigation . . . den[ied him] 'due process' and 'access to courts.'" (Docket Entry 4, ¶ 12(Ground Three)(a).) In that regard, Petitioner asserts that "A.D.A. Miller stated in open court in one

---

[4] Respondent's Brief cites to Exhibit G pages 2 through 48 as "enclosing copies of each indictment or waiver" (Docket Entry 13 at 11; <u>see also</u> Docket Entry 13-1 at 2 (listing an Exhibit G as containing "[i]ndictments in case nos. 15 CRS 054481-054495 and 16 CRS 054084-054088; waivers of indictment in case nos. 18 CRS 050132-050133; 18 CRS 050135; 18 CRS 050389-050393; and 18 CRS 050431-050433")); however, the electronic version of Respondent's Brief does not contain an Exhibit G.

of the return of seized property hearings (Approx. 2/3/20), that [Petitioner] had requested the Discovery for these cases and [Miller] was denying it," as well as that Petitioner "needed [that material] to successfully file post conviction petitions." (Docket Entry 16 at 13.) Because Petitioner's above-described complaint implicates the prosecutor's actions <u>after</u> the conclusion of Petitioner's underlying criminal cases and in connection with Petitioner's attempt to seek post-conviction relief, and correction of the asserted error would not impact Petitioner's underlying convictions and sentences, his assertions remain non-cognizable in this Section 2254 action. See <u>Preiser</u>, 411 U.S. at 484; <u>Morton</u>, 2012 WL 1410252, at *14.

Lastly, Petitioner's objection to the prosecutor's statement during the plea hearing that "'the drugs were found in [Petitioner's] brother's pocket'" (Docket Entry 4, ¶ 12(Ground Three)(a)) fails to establish prosecutorial misconduct because, as discussed above, the fact that deputies found drugs in the pocket of Petitioner's brother did not preclude the prosecution from charging Petitioner with possession of those drugs, <u>see</u> <u>Bowens</u>, 140 N.C. App. at 222.

In light of foregoing analysis, Ground Three does not entitle Petitioner to habeas relief.

4. Ground Four

In Ground Four, Petitioner alleges "[j]udicial [m]isconduct" by the "Surry County N.C. Clerk of Court" and the "North Carolina Administrative Office of the Courts" (Docket Entry 4, ¶ 12(Ground Four)), in that "[r]epeated request[s] to [the] clerk for case records: complied with in part, denied in majority[, e]ach reply contained [a] flier referring [sic] AOC as directing [the] court to provide copies[, l]etter to and reply from N.C.A.O.C. stating differently[,] AOC forwarded a copy of [Petitioner's] letter to '[his] attorney' who does not exist because [Petitioner's] case is final[, and] AOC being advocate [sic] ineffective defense attorney" (id., ¶ 12(Ground Four)(a) (internal parenthetical citations omitted); see also Docket Entry 5 at 12-13).

As all of the above-detailed contentions involve actions taken by entities _after_ the conclusion of Petitioner's underlying criminal cases and in the context of Petitioner's pursuit of post-conviction remedies, and correction of the errors asserted would not affect Petitioner's underlying convictions and sentences, Ground Four remains non-cognizable in this Section 2254 action. See Preiser, 411 U.S. at 484; Morton, 2012 WL 1410252, at *14.

5. Ground Five

Lastly, Petitioner asserts that the "North Carolina Department of Public Safety" denied him "'Due Process'" and "'Access to Courts.'" (Docket Entry 4 at 18; see also id. (setting forth as

35

"[s]upporting facts" that "[r]equire[ment] t[hat Petitioner] work forty (40) and fifty (50) hour work weeks in North Carolina Correctional Enterprises sewing plant for slave wages, under threat of displinary [sic] action for not doing so [gave him n]o viable coarse [sic] to receive time off of job to prepare legal claims[,] N.C.D.P.S. has contracted with North Carolina Prisoner Legal Services Inc to provide legal services and eliminate 'Law Librarys [sic] [,]' NCPLS are 'ineffective counsel' as provided by constitutional law[, t]hey do not provide legal assitance [sic], services, or resources for legitimate actions or anyone who wishes to proceed on thier [sic] own[, and] N.C.D.P.S. does not provide any outlet for making photocopies or even the use of a simple staple to secure legal papers together" (internal parenthetical citation omitted)); <u>see also</u> Docket Entry 5 at 11-12.)

Because Ground Five concerns actions taken by entities <u>after</u> the conclusion of Petitioner's underlying criminal cases and in the context of Petitioner's pursuit of post-conviction remedies, and correction of the errors asserted would not affect Petitioner's underlying convictions and sentences, Ground Five remains non-cognizable in this Section 2254 action. <u>See</u> <u>Preiser</u>, 411 U.S. at 484; <u>Morton</u>, 2012 WL 1410252, at *14.

## IV. <u>Conclusion</u>

Petitioner's claims provide no basis for collateral relief.[5]

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 12) be granted, that the Petition (Docket Entry 4) be denied, and that a judgment be entered dismissing this action, without issuance of a certificate of appealability.

**IT IS ORDERED** that Petitioner's motion to appoint counsel and for discovery (Docket Entry 17) is **DENIED.**

      /s/ L. Patrick Auld      
**L. Patrick Auld**
**United States Magistrate Judge**

June 25, 2021

---

[5] In view of the Petition's lack of merit, Petitioner's motion to appoint counsel and for discovery (Docket Entry 17) will be denied.